**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Century Industries, Inc., being sued as Century Industries Company, a Canadian corporation and Peter B. Hutton,

Plaintiffs,

v.

Rosemount Inc., a Minnesota corporation,

Defendant.

Civil No. 01-103 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

Thomas Pavelko, Esq., and Daniel Maertens, Esq. Fredrikson & Byron, 1100 International Center, 900 Second Avenue South, Minneapolis, MN 55402-3787, appeared on behalf of Plaintiffs.

Jeannine Lee, Esq., and Lori Semke, Esq., Flynn & Gaskins, 2900 Metropolitan Center, 333 South Seventh Street, Minneapolis, MN 55402, appeared on behalf of Defendant.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on April 20, 2001, pursuant to Defendant's Motion to Dismiss and to Strike and Plaintiffs' Motion for Preliminary Injunction. In the Complaint, Plaintiffs allege fraud and breach of contract in the formation and implementation of a settlement agreement arising out of a prior patent dispute. For the reasons set forth below, Plaintiffs' motion is denied and Defendant's motion is denied.

## Background

Defendant Rosemount is a Minnesota corporation which manufactures pressure transmitting equipment used in industrial processes. Plaintiff Century Industries Company ("Century") is a Canadian corporation which manufactures instrumentation valves, thermowells,

FILED MAY 0 3 2001
FRANCIS E. DOSAL CLERK
JUDGMENT ENTD
DEPUTY CLERK

and conventional manifold products. Plaintiff Peter Hutton is Century's President and former owner.

In 1995, Rosemount and Century were involved in a patent dispute which ultimately led to Rosemount filing suit against Century. That case, Civil File No. 3-95-1089, was assigned to the Honorable Richard H. Kyle and then-Magistrate Judge Ann D. Montgomery. Early in the litigation process, the parties entered into a settlement agreement ("the 1996 agreement") which included a mutual release of claims. The specific terms of that agreement included four provisions which are relevant to the current litigation: (1) Rosemount agreed to pay certain "technology transfer fees"[1] in exchange for a license for Century's U.S. Patent No. 5,277,224 ("the '224 patent"); (2) Rosemount agreed to promote Century, a small fledgling company in need of contacts, to Rosemount's own client base in a number of specific ways; (3) Rosemount granted Century a royalty-free, non-exclusive license for Rosemount's U.S. Patent No. 4,466,290 ("the '290 patent"); and (4) Century agreed to assign the '224 patent to Rosemount on the fifth anniversary of the settlement agreement. Under the terms of the settlement agreement, Century is required to assign the '224 patent to Rosemount on May 6, 2001.

Rosemount contends, and Century agrees, that Rosemount has paid all royalties dictated by the terms of the settlement agreement. However, Century argues that Rosemount has failed to engage in the promotional activities contemplated by the settlement agreement. In fact, Century alleges that Rosemount had no intention of engaging in those promotional activities.

---

[1] Rosemount does not consider the fees to be royalties, *per se*, because Rosemount contests the validity of the underlying patent. With all due respect to the terminology preferred by the parties and their reasons for using particular phrases, the Court will hereinafter refer to the payments described in the settlement agreement as "royalties." The Court does not mean to imply anything about the merits of the underlying patent dispute, with which the Court is admittedly quite unfamiliar.

Accordingly, Century has brought this action alleging that, in addition to breaching the settlement agreement, Rosemount committed fraud in signing the settlement agreement and inducing Century to sign the settlement agreement.

In the Complaint, Century has made a claim for recission of the contract. In anticipation of that remedy, Century now seeks to prevent the scheduled assignment of the '224 patent to Rosemount. Rosemount has moved the Court to dismiss Century's claim of fraud and to strike certain portions of the Complaint which suggest that Rosemount, and Rosemount's counsel acted in bad faith.

**Discussion**

**1. Rosemount's Motions**

Rosemount has moved the Court to dismiss Century's claim for fraud under Rule 12(b)(6) for failure to state a claim and under Rule 9(b) for failure to plead with particularity. In the Complaint, Century alleges that "Rosemount never intended to honor its promises and obligations under the Settlement Agreement, including, and in particular, the promotional, advertising and approved vendor status provisions of the Settlement Agreement." The Court finds that this allegation and the facts alleged supporting it meet the requirements of Rules 12(b)(6) and 9(b).

Although fraud typically requires a misrepresentation of past or present facts, a promise to do something in the future may be a basis for a fraud claim in Minnesota if the promisor has no intention of abiding by the promise. *See, e.g., Vandeputte v. Soderholm*, 216 N.W.2d 144, 147 (Minn. 1974). Century has alleged, on information and belief, that Rosemount entered into the settlement agreement with no intention of performing certain specified obligations thereunder. Such an allegation, if proven true, could certainly form the basis for a fraud claim.

Rosemount contends that Century's pleading is legally insufficient because Century has not alleged "affirmative evidence" showing that Rosemount had the requisite fraudulent intent at the time it entered into the settlement agreement. The cases Rosemount cites for this proposition, however, are inapposite; the cited cases involve sufficiency of evidence, not sufficiency of pleadings. *See, id.*; *Int'l Travel Arrangers v. NWA, Inc.*, 991 F.2d 1389, 1402 (8th Cir. 1993). For purposes of pleading, it is sufficient that Century has alleged the particular representations alleged to be fraudulent, who (generally) made those representations, when and where they were made, and that they were made with fraudulent intent. The facts tending to prove that fraudulent intent will be the subject of discovery and proof at trial. *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other condition of mind of a person may be averred generally").

While the Court finds that Century's pleadings are technically sufficient and denies Rosemount's motion to dismiss, the Court notes that Century faces an uphill battle in proving that Rosemount never intended to perform its obligations under the settlement agreement. Short of an admission by Rosemount of its fraudulent intent, the Court has difficulty imagining what type of evidence Century might present to establish promissory fraud. However, recognizing the possibility that Century may pull an evidentiary rabbit out of its hat, the Court concludes that the fraud count is adequately pled and should not be dismissed.

Rosemount has also moved the Court to strike certain portions of the Complaint. Specifically, the Complaint contains a detailed description of an agreement predating the settlement agreement (the "memorandum of understanding" or "MOU") and alleges that Rosemount and Rosemount's counsel fraudulently induced Century to sign that earlier agreement. The MOU was superceded by the settlement agreement, and the terms of the settlement agreement preclude Century for bringing any claim based on the MOU. Thus,

according to Rosemount, the factual allegations regarding the MOU are irrelevant to the present action; moreover, the allegations regarding the MOU suggest wrongdoing on the part of both Rosemount and Rosemount's counsel which could be construed as "impertinent" or "scandalous." *See* Fed. R. Civ. P. 12(f) ("the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter").

The Court declines to strike the offensive material. While the facts surrounding the signing of the MOU are not directly actionable, they may ultimately prove relevant to the issue of intent with respect to Century's fraud claim. Even if they are never directly relevant, they provide background and context for the facts which *are* relevant. Finally, the Court does not see any prejudice to Rosemount in allowing the Complaint to stand as pled. Anyone reading the Complaint should take the allegations regarding the MOU with the same grain of salt with which they take the allegations of the Complaint more generally; the Complaint is, by definition, an adversarial document, and the allegations will almost always be drafted so as to paint the opposing party in an unfavorable light.

## 2. Century's Motion for Preliminary Injunction

"[W]hether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981). No single factor is determinative, and, in fact, where the balance of harms strongly mitigates in favor of injunctive relief, the moving party's burden to demonstrate success on the merits may be reduced from a mathematical probability to a "substantial possibility of success." *Id.* at 113. Nevertheless, "a preliminary injunction is an

extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." 11A Wright, Miller & Kane, Federal Practice and Procedure § 2948 (2d ed. 1995); *see also Calvin Klein Cosmetics v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 667 (8th Cir. 1987). In the instant case, the Court finds that the balance of the equities, in light of Century's probability of success on the merits, weighs against granting an injunction.

The most important and compelling factor in the Court's analysis is the nature of the remedy Century seeks: Century's motion for preliminary injunction is premised upon not only succeeding on its breach of contract claim, but also being entitled to the remedy of rescission.

Rescission is an equitable remedy which may be appropriate where one party either fraudulently induced the other party to enter the contract or breached an essential term of the contract and where damages would be difficult or impossible to determine. *See Northern Pac. Ry. Co. v. United States*, 70 F. Supp. 836, 865 (D. Minn. 1946) (one claiming fraud in the inducement of a contract may elect rescission if he does so in a timely manner); *Cut Price Super Markets v. Kingpin Foods, Inc.*, 98 N.W.2d 257, 266 (Minn. 1959) (only material breach or substantial nonperformance will justify rescission); *Cloverdale Foods of Minnesota, Inc. v. Pioneer Snacks*, 580 N.W.2d 46, 49 (Minn. Ct. App. 1998) (same). Here, Century alleges both that Rosemount fraudulently induced the Century to enter into the contract and that Rosemount breached a material term of the contract–Rosemount's obligation to promote Century's manifolds–in a way which cannot be adequately remedied by money damages.

However, once a party is made aware of the facts which would form the basis for the right of rescission, he must promptly exercise the right; otherwise, if the party unreasonably delays, the party will be deemed to have waived his right. *See Cut Price Super Markets v. Kingpin Foods, Inc.*, 98 N.W.2d 257, 267 (Minn. 1959). Under the terms of the settlement

agreement, Rosemount's promotional obligations accrued during the first year of the agreement's term; according to Century, Rosemount immediately breached those obligations. Yet Century has only now come forward alleging breach and requesting rescission; in the interim, Century has continued to treat the contract as a "subsisting obligation" and has enjoyed the benefits of the agreement (the royalties paid by Rosemount and freedom from suit).

Century suggests that it was lured into complacency by Rosemount's repeated promises that performance was just around the corner. Based upon the record before the Court, however, Century will have some difficulty establishing that its reliance on Rosemount's promises–for five years–was reasonable.

In short, assuming the facts asserted by Century to be true and that Century can prove both fraud in the inducement and breach, the Court finds that there is only a minute probability that Century will be able to prove it is entitled to rescission of the contract.

Turning now to the other *Dataphase* factors, the Court finds that a balance of the equities really favors neither party. The potential harm to both parties is essentially the same: to be wrongfully denied possession of an intellectual property right during the pendency of the litigation. The law presumes that deprivation or infringement of a valid intellectual property right causes irreparable harm, but neither party here risks a greater harm than the other. The Court considers it irrelevant that Rosemount does not intend to enforce those rights against other potential manufacturers. Property–real, personal, or intellectual–is property, no matter what a person chooses to do with it. Whether the Court grants or denies the injunction, there is a risk that one party or the other will be unjustly deprived of its rights to the '224 patent.

Finally, with respect to public policy, the Court finds that public policy weighs against granting the injunction. The Court is not inclined to arrest the continued performance of a

contract of which only one term–however material–has allegedly been breached. The Court finds that public policy favors the continued execution of the settlement agreement, as anticipated by the parties at the time the agreement was signed, absent considerable evidence that Century will be entitled to rescission of the agreement.

For the reasons stated, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Preliminary Injunction (Doc. No. 12) is **DENIED**; and

2. Defendant's Motion to Dismiss and Motion to Strike (Doc. No. 6) is **DENIED**.

Dated: May 3, 2001

DONOVAN W. FRANK
Judge of United States District Court